**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMORY WILLIAMS, | Case No.: |
| Plaintiff, | |
| | JURY TRIAL DEMANDED |
| v. | |
| | **COMPLAINT FOR VIOLATIONS OF** |
| FORESCOUT TECHNOLOGIES, INC., | **FEDERAL SECURITIES LAWS** |
| THERESIA GOUW, MICHAEL | |
| DECESARE, JAMES BEER, DAVID | |
| DEWALT, ELIZABETH HACKENSON, | |
| MARK JENSEN, KATHY MCELLIGOTT, | |
| ENRIQUE SALEM, and HEZY | |
| YESHURUN, | |
| Defendants. | |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1.      This action concerns a proposed transaction announced on February 6, 2020, pursuant to which Forescout Technologies, Inc. ("Forescout" or the "Company") will be acquired by Ferrari Group Holdings, L.P. ("Ferrari").

2.      On February 6, 2020, Forescout's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Forescout's stockholders will receive $33.00 per share in cash for each share of common stock they own (the "Proposed Transaction").

3.      On March 24, 2020, in order to convince Forescout's stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and

misleading proxy statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

4.      The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.  Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5.      In addition, the Proxy disclosed that a special meeting of Forescout stockholders will be held on April 23, 2020 to vote on the Proposed Transaction (the "Stockholder Vote").  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Forescout stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.      This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial

compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of Forescout common stock.

10.     Defendant Forescout is a Delaware corporation and a party to the Merger Agreement. Forescout common stock is traded on the NASDAQ under the ticker symbol "FSCT."

11.     Defendant Theresia Gouw is Chairman of the Board of the Company.

12.     Defendant Michael DeCesare is Chief Executive Officer, President, and a director of the Company.

13.     Defendant James Beer is a director of the Company.

14.     Defendant David DeWalt is a director of the Company.

15.     Defendant Elizabeth Hackenson is a director of the Company.

16.     Defendant Mark Jensen is a director of the Company.

17.     Defendant Kathy McElligott is a director of the Company.

18.     Defendant Enrique Salem is a director of the Company.

19.     Defendant Hezy Yeshurun is a director of the Company.

## FACTS

20.     Forescout delivers device visibility and control to enable enterprises and government agencies to gain complete situational awareness of their environment and orchestrate action.

21.     On February 6, 2020, Forescout's Board caused the Company to enter into the Merger Agreement.

3

22.     Pursuant to the terms of the Merger Agreement, Forescout's stockholders will receive $33.00 in cash for each share of Forescout common stock they own in an all-cash merger.

23.     The Merger Agreement further provides that Forescout has agreed with Ferrari, a Delaware limited partnership, and Ferrari Merger Sub, Inc., a Delaware corporation and a wholly-owned subsidiary of Parent ("Merger Sub").  Under the Merger Agreement, among other things and subject to terms and conditions set forth therein, Merger Sub will be merged with and into the Company, with the Company surviving as a wholly-owned subsidiary of Ferrari (the "Merger").

24.     At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> at the Effective Time, by virtue of the Merger and without any action on the part of Parent, Merger Sub, the Company or the holders of any of the following securities, the following will occur … each share of Company Common Stock that is issued and outstanding as of immediately prior to the Effective Time (other than Owned Company Shares and Dissenting Company Shares) will be cancelled and extinguished and automatically converted into the right to receive cash in an amount equal to $33.00, without interest thereon (the "**Merger Consideration**"), in accordance with the provisions of Section 2.9 (or in the case of a lost, stolen or destroyed certificate, upon delivery of an affidavit (and bond, if required) in accordance with the provisions of Section 2.11).

25.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

26.     It is therefore imperative that the Company common stockholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

27.     Section 5.3 of the Merger Agreement provides for a "no solicitation" clause that prevents Forescout from soliciting alternative proposals and constraints its ability to negotiate with

potential buyers:

(b)      *No Solicitation or Negotiation after No-Shop Period Start Date*. Subject to Section 5.3(c), on the No-Shop Period Start Date, the Company will (A) cease and cause to be terminated any discussions or negotiations with, and terminate any data room access (or other access to diligence) of, any Person and its Representatives (other than any Excluded Party and its Representatives) that would otherwise be prohibited by this Section 5.3(b); (B) deliver a written notice to each Person (other than any Excluded Party and its Representatives) with whom discussions and negotiations are continuing as of the No-Shop Period Start Date to the effect that the Company is ending all discussions and negotiations with such Person with respect to any Acquisition Proposal effective on and from the No-Shop Period Start Date; and (C) unless the Company has already so requested, request that each Person (other than Parent and its Representatives and any Excluded Party and its Representatives) that has executed a confidentiality agreement in connection with its consideration of an Acquisition Transaction promptly return or destroy, in accordance with the terms of such confidentiality agreement, all non-public information furnished to such Person by or on behalf of the Company or its Subsidiaries prior to the date of this Agreement. Subject to Section 5.3(c), during the period commencing with the No-Shop Period Start Date and continuing during the remainder of the Pre-Closing Period, the Company will not, and will cause its Subsidiaries and their respective directors and executive officers not to, and the Company will not authorize or permit any of its or its Subsidiaries' employees, consultants or other Representatives to, directly or indirectly, (i) solicit, initiate, propose or induce the making, submission or announcement of, or knowingly encourage, facilitate or assist, any proposal or inquiry that constitutes, or is reasonably expected to lead to, an Acquisition Proposal; (ii) furnish to any Person (other than Parent, Merger Sub or any of their respective designees) any non-public information relating to the Company or any of its Subsidiaries or afford to any Person access to the business, properties, assets, books, records or other non-public information, or to any personnel, of the Company or any of its Subsidiaries (other than Parent, Merger Sub or any of their respective designees), in any such case in connection with any Acquisition Proposal or with the intent to induce the making, submission or announcement of, or to knowingly encourage, facilitate or assist, any proposal or inquiry that constitutes, or is reasonably expected to lead to, an Acquisition Proposal or the making of any proposal that would reasonably be expected to lead to an Acquisition Proposal; (iii) participate, or engage in discussions or negotiations, with any Person with respect to an Acquisition Proposal or with respect to any proposals or inquiries from third Persons relating to the making of an Acquisition Proposal (other than only informing such Persons of the provisions contained in this Section 5.3); (iv) approve, endorse or recommend any proposal that constitutes, or is reasonably expected to lead to, an Acquisition Proposal; (v) enter into any letter of intent, memorandum of understanding, merger agreement, acquisition agreement or other Contract relating to an Acquisition Transaction, other than an Acceptable Confidentiality Agreement (any such letter of intent, memorandum of understanding, merger agreement, acquisition agreement or other Contract relating to an Acquisition Transaction, an

"**Alternative Acquisition Agreement**"); or (vi) authorize or commit to do any of the foregoing. During the Pre-Closing Period, the Company will not be required to enforce, and will be permitted to waive, any provision of any standstill or confidentiality agreement to the extent that such provision prohibits or purports to prohibit a confidential proposal being made to the Company Board (or any committee thereof).

28.      In addition, Section 8.3 of the Merger Agreement requires Forescout to pay a $55,832,270 "termination fee" to Ferrari in the event this agreement is terminated by Forescout and improperly constrains the Company from obtaining a superior offer.

29.      Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.

30.      As alleged herein, the Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.

31.      First, the Proxy omits material information regarding Forescout's financial projections.

32.      With respect to Forescout's financial projections, the Proxy fails to disclose (i) all line items used to calculate (a) non-GAAP EBIT, (b) EBIT, and (c) unlevered free cash flow, (ii) net income projections, and (iii) a reconciliation of all non GAAP to GAAP metrics.

33.      The disclosure of projected financial information is material information necessary for Forescout stockholders to gain an understanding of the basis for any projections as to the future financial performance of the company.  In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the Company's financial advisors rendered in support of any fairness opinion.

34.      Second, the Proxy omits material information regarding the analysis performed by the Company's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley") in connection with the Proposed Transaction.

35.     With respect to Morgan Stanley's *Discounted Equity Analysis*, the Proxy fails to disclose (i) the individual inputs and assumptions underlying the range of discount rate of 10.8%, (ii) project net cash, and (iii) the Company's fully diluted share count.  This information must be disclosed to make the Proxy not materially misleading to Forescout stockholders and provide stockholders with full and relevant information in considering how to vote.

36.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy fails to disclose (i) the individual inputs and assumptions underlying the range of discount rates of 9.8% to 11.8%, (ii) the Company's terminal value, (iii) the Company's free cash flow, and (iv) Morgan Stanley's full basis for applying growth rates of 2.5% to 3.5%. This information must be disclosed to make the Proxy not materially misleading to Forescout stockholders and provide stockholders with full and relevant information in considering how to vote.

37.     With respect to Morgan Stanley's *Precedents Premiums Analysis*, the Proxy fails to disclose the premiums paid in transactions observed by Morgan Stanley in the analysis.  This information must be disclosed to make the Proxy not materially misleading to Forescout stockholders and provide stockholders with full and relevant information in considering how to vote.

38.     Third, the Proxy fails to disclose the nature of the past services Morgan Stanley has provided to the Forescout and Advent International Corporation.

39.     Full disclosure of investment banker compensation and all potential conflicts is material information stockholders of Forescout are entitled to receive in deciding what weight to place on the opinions and roles played by the investment banks in the Proposed Transaction.

40.     The omission of the above-referenced material information renders the Proxy false, misleading, and deficient for shareholders to make an educated decision in their vote.

41.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of material information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44.     Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

45.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore

negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

46.     The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy.  Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

47.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

48.     Plaintiff incorporates each and every allegation set forth above as if fully set  forth herein.

49.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

52.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 3, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*